15245

CULLUM v. NEW YORK LIFE INS. CO.

(14 S. E. (2d), 361)

November, 1940.

The decree of Judge Featherstone, ordered to be printed, is as follows:

The action here is to recover disability benefits under two policies of insurance issued by the defendant covering the

life of plaintiff's intestate. Both policies were issued in 1919 and each took effect January 31, 1919, which day became the anniversary of each of said policies. The policies are identical except as to amount. One is for Three Thousand ($3,000.00) Dollars and the other for Five Thousand ($5,000.00) Dollars. The facts were agreed upon.

The insured, plaintiff's intestate, died January 6, 1939, at the age of 56 years, five months and one day. The policies were in force at the time of his death. The insured became wholly and permanently disabled within the meaning of said policies on or prior to November 24, 1937. The defendant was given notice thereof on November 29, 1937, and formal proofs of his condition were accepted by the defendant on December 13, 1937. Therefore, the company waived the payment of premiums and the penalties were continued of force to the same effect as if premiums had been actually paid.

Photostatic copies of said policies of insurance were before me at the hearing. The primary question involved is the construction of the disability benefit provisions of the policies.

On Page 1 of each policy the following words are printed in large readable type:

"AND THE COMPANY AGREES TO PAY TO THE INSURED:

"*Permanent Disability.*—One-tenth of the face of this policy—per annum, during the lifetime of the Insured if the Insured becomes 'wholly and permanently disabled before age 60, subject to all the terms and conditions contained in Section 1 hereof."

At the bottom of the same page, in prominent type, are these words: "*Insurance payable at death.* Premiums payable during life. *Total and permanent disability benefits.* Double indemnity for fatal accident. Annual participation in surplus." (Emphasis added.)

On the second page, in smaller type, we find the following:

"TOTAL AND PERMANENT DISABILITY BENEFITS:

"Whenever the Company receives due proof, before default in the payment of premium, that the Insured, before the anniversary of the policy on which the Insured's age at nearest birthday is 60 years and subsequent to the delivery hereof, has become wholly disabled by bodily injury or disease so that he is and will be presumably, thereby permanently and continuously prevented from engaging in any occupation whatsoever for remuneration or profit, and that such disability has then existed for not less than sixty days—the permanent loss of the sight of both eyes, or the severance of both hands or of both feet, or of one entire hand and one entire foot, to be considered a total and permament disability without prejudice to other causes of disability —then

"1. *Waiver or Premium.*

"2. *Life Income to Insured.*—One year after the anniversary of the Policy next succeeding the receipt of such proof, *the Company will pay* the Insured a sum equal to one-tenth of the face of the Policy and a like sum on each anniversary thereafter *during the lifetime and continued disability of the Insured.* Such *income payments* shall not reduce the sum payable in any settlement of the Policy. The Policy must be returned to the. Company for indorsement thereon of each *income payment.* If there be any indebtedness on the Policy, the interest thereon may be deducted from each *income payment.*" (Emphasis added.)

The other provisions of the policies have no direct bearing on the issue here involved, and for that reason they are omitted.

The insurance company contends that it is not liable for disability benefits since the insured did not live through two anniversary dates next succeeding proofs of his disa-

bility. It invokes the common-law rule as to annuities, to the effect that, "where an annuity, whether created *inter vivos* or by will, is payable on fixed days during the life of the annuitant, who dies before the day, the personal representative is not entitled to a proportionate part of the annuity," subject only to two exceptions, viz., "where the annuity was given by a parent to an infant child or by a husband to a wife living separate and part from him."

I have been unable to find, nor has there been brought to my attention, a South Carolina case deciding the exact point at issue.

The general common-law rule, applicable to gifts *inter vivos* or by will, does not necessarily apply, as it seems to me, to insurance contracts whereby an insured, to protect himself against the day when physical disability may overtake and render him incapable of supplying his own maintenance, contracts with an insurance company, in consideraton of the payment of stipulated premiums, to provide that maintenance for him, if and when the stated conditions of incapacity actually arise. Such contracts are cold-blooded business propositions, entered into by the insured for protection and by the company for profit.

When the common-law rule of annuities became a rule, there were no contracts such as the ones here under consideration. These contracts were prepared by the insurance company and printed by them. It is a general principle of law, well recognized in this State, that where such contracts are ambiguous, where the terms thereof may be understood in more senses than one, or where they are capable of two meanings, the construction given to them must be one which is most favorable to the insured. *Walker v. Commercial Casualty Insurance Company*, 191 S. C., 187, 4 S. E. (2d), 248, and cases cited. In this connection it should be noted that the policies nowhere refer to the benefits thereof as "annuities," but that they are variously referred to as "benefits", "disability payments," "life income to insured,"

and "such income payments." Even under the old common-law doctrine "income" is distinguished from "annuity." 2 R. C. L., page 4, Section 5. The policies refer to the payments to be made by the company as "income payments," and not as "annuities." The contracts in their entirety evidence a purpose on the part of the insured to provide maintenance and support for himself in the event he became disabled so that he could not work and provide for himself, and the obligation on the part of the company, for the consideration of the premiums received, to provide maintenance and support for the insured if and when he actually became disabled. If the construction of the contracts contended for by the company is adopted, the evident purpose of the insurance will be defeated.

In one place the policies obligate the company, for valuable considerations received by it, "to pay to the insured one-tenth of the face of this policy per annum, during the life time of the insured." Thus, the rate of payment for disability, or the rate of income during the continuance of disability, was fixed. A merchant might offer to sell at so much per yard or per bushel, but a purchaser by taking a half yard or a half bushel would not get such lesser portion for nothing, nor would he pay for a full yard or a full bushel while getting only one-half that much. The company had something to sell and the insured bought and paid for it. The issue is, shall the company be required to deliver what it sold? If one should borrow money, contracting to pay six one-hundredths of the face of the loan per annum for its use, and to repay both principal and charges for its use within a half year, he would not be required to account for a full year's interest, nor would he be compelled to pay only one year's interest charges if he should keep the amount borrowed for 23 months and 29 days.

In another place, the contracts provide that if the insured should become totally disabled, which in fact he did, "one year after the anniversary of the policy next succeeding

the receipt of such proof, the company will pay the insured a sum equal to one-tenth of the face of the policy," and then continues, "and a like sum on each anniversary thereafter during the life time and continued disability of the insured." Do the words "during the life time and continued disability of the insured" qualify the liability for the first payment, or do they qualify only the obligation to make like payments on succeeding anniversaries? If they have no reference to the first payment and only qualify succeeding payments, then undoubtedly the plaintiff would be entitled to recover the full one-tenth of the face of each policy. If the quoted words qualify all obligations that might arise under the disability provisions of the policies, then the query arises, what was intended by the use of those words? Obviously the contracts could have been written so as to leave no doubt of their meaning. Has that been done? I do not think so. The several references to disability benefits, appearing on different pages of the policies, are so expressed that agents selling the same might give them one construction, while other agents contesting the liability of the company thereunder might give them another construction. This gives rise to the application of the rules of construction so clearly stated in the case of *Walker v. Commercial Casualty Insurance Company, supra.*

It is significant that the company put a heading to the paragraph from which the foregoing full quotation was taken. It is interpretative of what follows. This heading reads: "Life Income to Insured." This interpretative heading is printed in large and bolder type than the rest of the paragraph; and, when it is taken into consideration with the main heading, "Permanent Disability Benefits," there is clearly implied an obligation on the part of the company to pay the insured a "Life Income" during the period of his disability at the rate of one-tenth of the face of said policies per annum.

As pointed out in 2 R. C. L., pages 12, 13, Section 21, two exceptions were early engrafted on the harsh rule of

the common law that annuities were not apportionable, viz., where the annuity was given by a parent to an infant or by a husband to his wife living apart from him, and soon after another exception to include annuities given to widows in lieu of dower. The author then adds this observation: "Moreover the inequity and arbitrariness of the general rule has been so generally conceded that modern legislative and judicial decisions have steadily tended to narrow the rule to enlarge the exceptions, so that it may be safely stated that the trend of judicial opinion is now in favor of applying the equitable principle of apportionment to any case where the annuity is made for the purpose of maintenance and support."

Our own Court has not been in agreement with the strict application of the old common-law rule. In *ex parte Rutledge,* Harp. Eq., 65, 5 S. C. Eq., 65, 14 Am. Dec., 696, in construing a deed which conveyed to certain trustees shares of bank stock "in trust nevertheless to receive the dividends on the same, and pay and apply the same one-half yearly, as they shall be received from the bank, unto the said" *donee,* held that the intent of the instrument was to provide a support for the object of the donor's bounty and that although the annuity funds were made "payable one-half yearly, yet they arose out of the daily profit of the bank, which might be ascertained at any intermediate time"; and thereupon adjudged that the "amount of the dividends which had accrued at the time of the death" of the annuitant should be ascertained and paid, although the time for payment had not arrived when annuitant died.

In *Waring v. Purcell,* 1 Hill, Eq., 193, 10 S. C. Eq., 193, the Court said: "On the second ground, we concur with the Chancellor. The bequest to Sarah Hutchinson is of 'five hundred dollars' annuity to be paid her out of the income of my estate, on the first day of March, in every year.' The bequest could not take effect until the death of the testator. He died in September, and the whole annuity would not be due until the September of the following year.

But it was to be paid on the first of March in every year; and we think it comports best with the intention of the testator, that she should be paid, on the first day of March next after his death, a proportion of the annuity equal to the time which had run after his death."

In the last-mentioned case the Court definitely recognized the doctrine of apportionment as applied to an annuity. So if it should be conceded that the disability benefits contemplated in the contracts under review should be regarded as annuities *inter vivos,* we have the last-cited case as authority for applying the very reasonable and equitable doctrine of apportionment.

The defendant company rested its contention of non-liability largely upon the case of *Wells v. Guardian Life Insurance Company,* 213 N. C., 178, 195 S. E., 394, 397, 116 A. L. R., 130. The policy under consideration in that case is in many respects dissimilar to the ones here in issue. One marked dissimilarity is that in the *Wells case* the insurance policy referred to the obligation assumed as a "Disability Annuity," both in the heading and in the body of the contract relating to disability. As stated by the Court in the *Wells case:* "The terms of the policy *under the facts of this case* created 'a *disability annuity* of one-tenth of the face amount of the policy' payable to the insured by the insurer, and provided for the making of '*such annuity payments* annually on the anniversary of the first payment during such disability prior to the maturity of the policy.' " (Emphasis added.)

Although the North Carolina Court quoted the old common-law rule of annuities, with the two exceptions first above noted, and held the rule applicable in North Carolina, it added this comment: "However, the harshness of the rule has been modified in many jurisdictions by statute, and in some by judicial decisions."

Following the report of the *Wells case,* there is an annotation in 116 A. L. R. on the subject of "Apportionment

of Annuities in Respect of Time." Only a few of the cases cited in the annotation arose under insurance contracts. Among the cases cited were the South Carolina cases of *Waring v. Purcell, supra* and *Ex parte Rutledge, supra.*

The case of *Newberger v. New York Life Insurance Company* (1936), 56 R. I., 442, 186 A., 472, 475, referred to in the annotation, deals with policies of insurance issued by this defendant, and they are of like language to the ones under consideration. The Court held such policies to be ambiguous and susceptible of different interpretations, stating, among other things: "If the insured should die, as in the instant cases, before the date arrived for making the first disability payments, we see no reason why the insured's representative should not be entitled to such part of the disability benefits as may already have accrued from day to day up to the time of the insured's death. In our judgment, a reasonable construction of the terms of the policies requires that, in the present cases, the plaintiff be entitled to an apportionment of the first payment of disability benefits due under such policies. Such apportionment would be based on the relation the date of the insured's death bore to the whole period extending from the time when the defendant received due proof of the insured's total disability, to the date of the anniversary of the policies next succeeding the anniversary following such receipt of proof. The fact that the additional premium, the consideration for the added protection in case of total disability, cannot be apportioned, in our opinion does not prevent the apportionment of the disability benefits. The two payments are on a different basis. The premium is an entire payment in advance, expressly provided for by the terms of the policies. *The disability benefits accrue from day to day as the disability continues; the time for payment only being postponed to certain stated dates.*" (Emphasis added.)

In *Brownstein v. New York Life Insurance Company,* 158 Md., 51, 148 A., 273, 274, a policy identical with the

ones here under consideration was construed. There the Court declared that inasmuch as the provisions for disability benefits appeared in the policy under the heading "Life Income to Insured," the insured "certainly had every reason to believe that, if he should be so overcome by bodily injury or disease as to make him unfit to engage in any occupation, he would be relieved of the distress involved in such a condition, and that, during his lifetime, he would have what the appellee promised, namely, a 'Life Income to Insured,' and that this would be secured to him to the last days of his life and when most needed"; and that "this is what the disability provision of the policy said to him." Accordingly the disability payments under the policy were held to be apportionable. The Court further pointed out that "the trend of judicial opinion is now in favor of applying the principle of apportionment to any case where the annuity is made for the purpose of maintenance and support"; that "the rules governing annuities rest upon a different basis than those which relate to a contract of insurance"; and that "resort must be had here to the paper on which payment is sought by the appellant and resisted by the appellee."

In an annotation, 101 A. L. R., 899, the annotator says: "Upon principle, there would seem to be nothing in the general rule concerning the non-apportionment of annuities, or the basis upon which it rests, to prevent the apportionment of periodical payments which are provided for in an insurance contract, *where by reason of the evident purpose of the provision and the language in which it is expressed an intent in favor of apportionment appears*. In fact, two of the three insurance policy cases in which the question of apportionment has arisen have treated the problem as one of contract construction; in the other case, the decision was based upon a statute which was deemed controlling." (Emphasis added.)

I am convinced that the Rhode Island and Maryland Courts, in the decisions above cited, have reached the proper

interpretation of the exact contract provisions which are here considered. The contracts clearly imply an obligation on the part of the insurance company to provide the insured with a *maintenance income* for so long as he remained disabled within the sense of the disability provisions of the contracts. The insured evidently paid the premiums in anticipation of receiving such protection during a period when he could no longer engage in productive activity to care for his own needs. The terms of the contracts were written by the company, and it fixed the premium rate to be paid for the protection provided. Had the company desired to guard itself against liability, such as is claimed in this action, it had the means and the wisdom to do so. It could have expressed itself in language so plain and understandable as to preclude doubts and misunderstandings as to the meaning of the contracts. This it neglected to do. The least that can now be said is, that there is doubt as to what was intended by the contract. The fault for this does not lie with the insured; it rests squarely upon the insurer.

I find and conclude:

1. That the policies of insurance here in question, upon the points contested, were for maintenance and, in the true sense, were not intended to and did not create annuities *inter vivos*; and that the rights of the parties to said contracts should be determined by a liberal construction of the terms thereof, favorable to insured.

2. That the clear implication of said contracts is, that, in case of the disability of the insured, which in fact occurred well before the anniversary date of said policies of 1938, the defendant was bound to pay to the insured a "life income" equal to, or at the rate of one-tenth of the face amount of each policy per annum, the maturity dates for such payments being the successive anniversary dates of said policies after the first one following disability.

3. That the manifestly just and equitable rule of apportionment should apply to said policies, even if the benefits

thereunder should be regarded as annuities, since they were intended for maintenance during disability.

4. That said policies, to say the least of them, were ambiguous; and that the plaintiff is entitled to constructions thereof which are most favorable to the insured.

5. That the plaintiff is entitled to recover judgment against the defendant for three hundred and forty three hundred and sixty-fifths (340/365) of the face amount of each policy (the two aggregating $8,000.00), or the total sum of Seven Hundred, Forty-five and 20/100 ($745.20) Dollars, with interest thereon to date of entry of said judgment, at the rate of six (6%) per centum per annum, figured from January 31, 1939, the anniversary date of said policies on which payments fell due, and for costs.

It is accordingly so ordered and adjudged.

*Messrs. Thomas, Cain & Black*, for appellant,

*Messrs. Timmerman & Timmerman*, for respondent,

May 1, 1941.

The opinion of the Court was delivered by MR. JUSTICE STUKES.

In the above-stated case opinion was filed April 10, 1941, since which and in due time petition for rehearing has been filed by the appellant; upon consideration of the latter, it is ordered, that the opinion heretofore filed be withdrawn from the files of the Court and that the following be substituted as the opinion of the Court in the case, and that the petition for rehearing be refused:

## ON PETITION FOR REHEARING

The clear and convincing Circuit decree of Judge Featherstone will be reported. From it the defendant has appealed upon exceptions which it stated in argument raise the following questions for determination by this Court:

1. Are the provisions in the insurance contract under consideration ambiguous, or is the language and intent of the policies clear?

2. Where it is admitted that the insured died before the anniversary named in the insurance contracts, upon which a benefit would otherwise have been payable, is the insured's estate entitled to an apportionment of said benefit?

Answering the first question, we agree with the Circuit Judge that the policy provisions are ambiguous.

On the first page, as pointed out in the decree, "The Company agrees to pay to the insured one-tenth of the face of this policy per annum, during the lifetime of the insured, if the insured becomes wholly and permanently disabled before age 60," but the provision continues, "subject to all the terms and conditions contained in Section 1 hereof." Section 1 appears on page 2 and therein it is provided that the first payment of "life income to insured" will be made "one year after the anniversary of the policy next succeeding the receipt of such proof * * *."

That the policy is ambiguous in this particular is demonstrated by the consideration that the promise upon the face, first page, of the policy is to the effect that the insurer will pay one-tenth of the face amount per annum during the lifetime and total disability of the insured and although it is expressly admitted by the insurer that the insured became totally and permanently disabled on or before November 24, 1937 (and due proof thereof was submitted to the company on December 13, 1937), and lived in that condition until January 6, 1939, considerably more than a year, liability thereunder is denied by the appellant.

"Per" is defined in Webster's New International Dictionary, Second Edition, Unabridged, 1939, as meaning "with equality, uniformity, or regularity, on a basis of a unit, as per annum." Volume 48 Corpus Juris, page 806, defines "per annum" as a Latin term "which may mean by the year, every year, through the year, yearly, also during the year," with separate citations of authorities for these various meanings.

It may be added that construction of the same policy form by other Courts of last resort has resulted in conflicting results, which seems to us proof of high order of the ambiguity of the provisions. See the A. L. R. annotations, particularly that in Volume 101, at page 899. We like the reasoning of the Maryland Court in the *Brownstein case,* 158 Md., 51, 148 A., 273, in which the same result was reached as here upon the identical policy form and without the aid of statute. It is quoted from at length in the decree, reported herewith.

To sustain its view of the second question appellant has resort to the ancient rule of the English common law (long since there changed by statute) that annuities are not apportionable as of time. None of the old English or early American cases which we have found in which the rule was applied involved insurance contracts. In fact, the rule appears to have been established long before the latter were

known. The rule seems never to have been applied in the Courts of this State although it has been recognized in departures from it whether they were held exceptions or necessary to carry out the intention of the creator of the annuity. *Waring v. Purcell,* 1 Hill Eq., 193; *McLemore v. Blocker,* Harp. Eq., 272; *Ex parte Rutledge,* Harp. Eq., 65, 14 Am. Dec., 696.

Appellant's position is, in our opinion, foreclosed by the rule of the last-cited case, *Ex parte Rutledge.* There one was given an annuity, payable semi-annually, consisting of the dividends upon certain bank stock. He died in a few days, as did the respondent here, before the payment date and the question was, as here, whether his representative should be paid pro rata. We quote the Court's disposition of the problem: "An entire interest, which only accrues at particular periods, cannot be apportioned, because it is not susceptible of any intermediate division, and therefore it was necessary in England to provide by a positive statute for the apportionment of rent. But it appears from all the cases which have been referred to, that wherever an interest is daily accruing, it may be apportioned, as in the case of interest on a bond, which accrues *de die in diem.* (*Banner v. Lowe,* 13 Ves., 135.) So when the fund is provided for maintenance, which is still more favored. 'This (says the Court in *Hay v. Palmer,* 2 P. W., 503) is a stronger case than that of interest, for it is for daily support.' The present claim is of that nature, it is expressly declared by the deed of Mrs. Coslett, that the dividends on the stock settled, were intended as maintenance, and there is reason to believe that the advances made by the petitioner to his testator were on the credit of them. They were the only funds on which the testator depended for subsistence and they were daily accruing; for although payable only half yearly, yet they arose out of the daily profits of the bank, which might be ascertained at any intermediate time. It is therefore ordered and decreed, that it be referred to

the commissioner to ascertain the amount of the dividends which had accrued at the time of the death of the petitioner's testator, on the stock settled on him for life, and that the same be paid to the petitioner as his executor."

It cannot be said that the case is distinguishable from that in hand on the ground that there it was expressly provided in the creation of the annuity that it was for the maintenance of the annuitant. This because the provision in the instant case was palpably for maintenance, for the annuity came into existence under the contract only when the annuitant became permanently and wholly disabled and was thereby continuously prevented from engaging in any occupation for remuneration or profit. Furthermore, if there were doubt that the annuity here was provided for the maintenance of the insured it would be removed by the failure of the appellant to except to the repeated findings to that effect in the decree and by the express agreement of appellant in its written argument with such conclusion of the trial Judge.

Just as the bank from day to day made the profits for its semi-annual dividends which constituted the annuity in the *Rutledge case,* the appellant here from day to day accumulates the funds which enable it to make the payments required under these and its other policies; so the apportionment is as practical and logical here as in the earlier case.

Appellant's questions are answered adversely to it, the exceptions overruled and the judgment below affirmed.

MR. CHIEF JUSTICE BONHAM and MESSRS. JUSTICES CARTER, BAKER and FISHBURNE concur.